UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN E. KENNEY, JR.,<br><br>Defendant. | 05 Civ 7944 (SAS)<br>ECF Case |

**THE SECURITIES AND EXCHANGE COMMISSION'S BENCH MEMORANDUM REGARDING THE "IN CONNECTION WITH" REQUIREMENT**

November 27, 2006

Robert W. Pommer III (RP 5328)
Thomas C. Swiers

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

100 F Street, N.E.
Washington, D.C. 20549-0430
(202) 551-4479

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................3

I. THE PHRASE "IN CONNECTION WITH" SHOULD BE INTERPRETED BROADLY ....................................................................................3

II. WRC'S DISSEMINATION OF FALSE QUARTERLY AND ANNUAL REPORTS SATISFIES THE "IN CONNECTION WITH" REQUIREMENT ....................................................................................3

III. TRADING IN WRC NOTES DURING THE RELEVANT PERIOD FURTHER ESTABLISHES THE "IN CONNECTION WITH" REQUIREMENT ....................................................................................9

CONCLUSION ......................................................................................................................10

**INTRODUCTION**

Pursuant to the Court's Order dated November 20, 2006, the Securities and Exchange Commission ("SEC"), respectfully submits this memorandum regarding the "in connection with" requirement for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

The Supreme Court has repeatedly emphasized that the phrase "in connection with the purchase or sale of any security" is exceedingly broad and should be construed flexibly to effectuate the remedial purposes of the Exchange Act. Thus, the "in connection with" requirement is satisfied when a misrepresentation is made "in a manner reasonably calculated to influence the investing public." The Second Circuit and numerous other courts have consistently held that the public dissemination of misrepresentations in a document such as a press release or annual report can by itself satisfy the "in connection with" requirement. Here, the misstatements at issue were made in publicly filed SEC reports that are the type of documents reasonably calculated to influence the investing public. The misstatements were material, and the "in connection with" requirement has been met.

To the extent the Court determines that the fraud must "coincide" with actual securities transactions, the Court need not look further than the defendant. In pursuing his position of materiality, Kenney has repeatedly asserted that there was active trading in the WRC notes that "coincided" with the Company's disclosures (e.g., the bad debt write off in May of 2003). While the SEC has challenged Kenney's claims about materiality – pointing out that such matters would be subject only to expert opinion testimony and that Kenney has withdrawn his expert on the topic – there can be no dispute that there were in fact securities transaction that coincided with the Company's disclosures.

**BACKGROUND**

WRC Media, Inc. ("WRC" or the "Company") had $152 million of debt securities registered with the Commission pursuant to the Securities Act of 1933 that traded on the Over the Counter Market. In its Form S-4 registration statement, WRC agreed to provide the note holders, so long as any notes were outstanding, quarterly and annual reports on Forms 10-Q and 10-K, as well as all current reports on Form 8-K, in compliance with Commission rules and regulations. During all relevant times, WRC filed consolidated financial statements and reported the subsidiaries' individual financial performance in its Form 10-Qs and 10-Ks. [Pre-Trial Order, Ex. A, Joint Statement of Undisputed Facts ¶2]

The SEC contends that during 2002, the defendant, Martin E. Kenney, Jr., orchestrated the fraudulent recognition of $1.2 million in revenue from a purported sale of educational software to the Monroe City, Louisiana School District. As a result, WRC filed financial reports with the SEC, certified by Mr. Kenney, that materially misstated its 2002 fourth quarter results. Those reports included a March 24, 2003 press release filed by WRC on Form 8-K and WRC's fiscal 2002 Form 10-K, filed on March 31, 2003.

The SEC further alleges that the fraud was compounded in the first quarter of 2003 when Mr. Kenney caused WRC to incorrectly record a bad debt reserve for the purported Monroe "receivable." The bad debt reserve was disclosed in WRC's Form 10-Q, filed on May 15, 2003 and certified by Mr. Kenney. Mr. Kenney discussed the increase to the bad debt reserve in a May 15, 2003 press release reporting WRC's first quarter 2003 financial results and an investor conference call on May 20, 2003.

## ARGUMENT

### I. THE PHRASE "IN CONNECTION WITH" SHOULD BE INTERPRETED BROADLY

In general, courts have recognized that the meaning of the Section 10(b) phrase "in connection with the purchase or sale of any security" is "as broad and flexible as is necessary to accomplish the statute's purpose of protecting investors." See SEC v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993), and cases discussed therein; SEC v. Zandford, 535 U.S. 813, 819 (2002) (Section 10(b) "should be construed, not technically and restrictively, but flexibly to effectuate its remedial purposes") (internal quotation marks and citations omitted). The Second Circuit has long recognized that the "in connection with" requirement in Section 10(b) is satisfied when a misrepresentation is made "in a manner reasonably calculated to influence the investing public." SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 862 (2d Cir. 1968) (en banc).

By its plain terms the phrase "in connection with the purchase or sale" of a security requires only that there be a nexus or relationship between the fraud and a securities transaction. See Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12 (1971) (paraphrasing "in connection with" as "touching"); Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977) (quoting "touching" language from Bankers Life with approval). The necessary connection therefore exists when, among other situations, the fraud "coincides" with a securities transaction. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1513 (2006) ("it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else"); SEC v. Zandford, 535 U.S. at 822.

### II. WRC'S DISSEMINATION OF FALSE QUARTERLY AND ANNUAL REPORTS SATISFIES THE "IN CONNECTION WITH" REQUIREMENT

In its Trial Memorandum, the SEC stated that "the alleged fraud was in connection with the purchase or sale of securities since Kenney disseminated false and misleading information

into the marketplace through SEC filings and press releases."[1] This statement of the law comports with longstanding precedent. As recognized by the Second Circuit, the dissemination or filing of false and misleading statements in documents such as quarterly and annual reports satisfies the "in connection with" requirement. E.g., In re Ames Dep't Stores Inc. Stock Litig., 991 F.2d 953, 966 (2d Cir. 1993) ("statements directed to the general public which affect the public's interest in the corporation's stock are made in connection with sales or purchases of that stock."); accord SEC v. Texas Gulf Sulphur, 401 F.2d at 862. In general, "fraud can be committed by any means of disseminating false information into the market on which a reasonable investor would rely." Ames, 991 F.2d at 967. Accordingly, where the fraud involves false press releases, quarterly and annual reports, and other documents that an investor would presumably rely upon, the "'in connection with' requirement is generally satisfied by proof of the means of dissemination and the materiality of the misrepresentation or omission." SEC v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993), citing Ames, 991 F.2d at 963, 965.

This Court has consistently held in SEC enforcement actions that misrepresentations and omissions found in publicly filed SEC reports clearly satisfy the "in connection with" requirement. See, e.g., SEC v. Solucorp Indus. , Ltd., 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003) (as defendants "disseminated false and misleading information into the marketplace through SEC filings, press releases and shareholder letters, they did so 'in connection with' the purchase or sale of a security."); SEC v. DCI Telecommunications, Inc., 122 F. Supp. 2d 495, 499-500 (S.D.N.Y. 2000) (SEC adequately pled the "in connection with" element by alleging that defendants disseminated false financial statements, press releases and other documents in a manner that was "reasonably calculated" to influence the investing public); SEC v. Schiffer,

[1] Plaintiff Securities and Exchange Commission's Trial Memorandum at 10 n.3.

1998 WL 307375, at *2-3 (S.D.N.Y. June 11, 1998) (filing materially false statements with the SEC satisfied "in connection with" requirement); SEC v. Softpoint, 958 F. Supp. 846, 862 (S.D.N.Y. 1997) ("press releases and annual reports were unquestionably the type of documents upon which an investor would have relied in deciding whether to purchase Softpoint stock, hence they satisfy the "in connection with" requirement of Section 10(b) and Rule 10b-5."); In re JWP Inc. Sec. Litig., 928 F. Supp. 1239, 1251 (S.D.N.Y. 1996) (Ernst & Young's audit reports contained in SEC filed annual reports satisfied in connection with requirement because such audit reports "are precisely the sort of information that a reasonable investor would consider in evaluating JWP's prospects."); SEC v. Benson, 657 F. Supp, 112, 1131 (S.D.N.Y. 1987) (annual and quarterly reports satisfy the "in connection with" requirement since "[t]hey are clearly documents that an investor would rely on in deciding whether to purchase Empire's securities."); see also SEC v. Hasho, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992) ("any statement that is reasonably calculated to influence the average investor satisfies the 'in connection with' requirement of Section 10(b) and Rule 10b-5.").[2]

Financial frauds involving false and misleading SEC reports are the classic example of the type of conduct subject to the prohibitions of Section 10(b). Thus, the Second Circuit has cautioned district courts against taking too narrow a view of the "in connection with" requirement based on the reasoning of cases that dealt with atypical fraud. Ames, 991 F.2d at 967 (atypical frauds "pose analytical difficulties not present in a straightforward case"). Accordingly, Kenney's reliance on Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 847 (2d Cir.

---

[2] These district court decisions are consistent with decisions from courts in other Circuits. See, e.g., Semerenko v. Cendant Corp., 223 F.3d 165, 176 (3rd Cir. 2000); SEC v. Savoy Industries, Inc., 587 F.2d 1149, 1171 (D.C. Cir. 1978); SEC v. Yuen, 2006 WL 1390828, at *40 (C.D. Cal. March 16, 2006); SEC v. Gallagher, 1989 WL 95252 at *4 (ED. Pa. Aug. 16, 1989).

1986) – a case involving a clearly atypical fraud arising out of a bankruptcy proceeding – is misplaced.

The Second Circuit's decision in Ames is particularly instructive. In Ames, the court held that misrepresentations about Ames' business made in that company's debt offerings were issued "in connection with" the plaintiffs' purchases of Ames common stock. 991 F.2d at 965. The court concluded that the prospectuses related to the debt offerings were "precisely the sort of documents which a reasonable investor would consider in evaluating a company's prospects" and that the documents "were of a sort quite likely to influence the investing public's interest in the company's common stock as well." Id.

In support of its broad construction of the "in connection with" requirement, the court relied on SEC v. Texas Gulf Sulphur and subsequent decisions from the Second Circuit. Noting the similarities between the "in connection with" requirement and standard for materiality, the court explained:

> "Since the [SEC v. Texas Gulf Sulphur] court's quoted test of 'connection' closely resembles the same decision's criterion for materiality, the lesson seems to be that any material information issued by a corporation (whose securities are publicly traded) has appropriate 'connection' to constitute a 10b-5 violation if the information is misleading."

Ames, 991 F.2d at 965, quoting Alan R. Bromberg and Lewis D. Lowenfels, 2 Securities Fraud & Commodities Fraud § 76(2)(a) at 190.24 (1973). Thus, disseminating false information into the market on which a reasonable investor would rely appropriately satisfies the "in connection with" requirement.[3]

[3] While recognizing that reliance and materiality were distinct elements for a private party action under Rule 10b-5, the Court noted that the broad reach of the "in connection with" language should be construed consistently with the fraud-on-the market theory. 991 F.2d at 967-68.

A similar result was reached in SEC v. Rana. In that case, the defendant argued that the SEC failed to establish a violation of Section 10(b) and Rule 10b-5 because it failed to show any purchase or sale of securities in reliance on their misrepresentations. 8 F.3d at 1361. Rana/Vista published an allegedly false press release (after the close of trading on February 8) regarding its proposed leveraged buy-out of Superior Industries. Id. at 1361. However, the morning following the press release (February 9), the AMEX stopped all trading in Superior's stock and did not reopen trading until after the company had released curative information. Id. Thus, the defendants argued that no one purchased or sold any Superior stock "in connection with" their statements. Id.

Relying on the Second Circuit decisions in Ames and Texas Gulf Sulphur, the court rejected those arguments and held that the "in connection with" requirement was met: "the defendants' issuance of the February 8 press release, coupled with the public trading in Superior stock thereafter satisfies the 'in connection with' requirement." Id. at 1362. The Court explained its reasoning as follows:

> Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the "in connection with" requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission. . . . The genesis of this rule is the early case of SEC v. Texas Gulf Sulphur Co., which established that the connection requirement is satisfied "whenever assertions are made, as here, in a manner reasonably calculated to influence the investing public." While interpretations of "in connection with" continue to change as applied to private plaintiffs, its meaning in SEC actions remains as broad and flexible as is necessary to accomplish the statute's purpose of protecting investors.

SEC v. Rana, 8 F.3d at 1362 (internal and external citations omitted).

Significantly, the Court of Appeals rejected the defendants' argument that the SEC was required to plead and prove reliance, namely that "at least one investor actually received, read and relied upon the statements contained in the Vista release and, in reasonable reliance thereon, actually purchased (or sold) shares of Superior stock as a result." Id. at 1363. In so doing, the court recognized the difference between a private party's implied right of action under Rule 10b-5 and the SEC's express statutory authority. Reliance was a judicially created element of, and limitation on, a private 10b-5 action. Id. at 1364. In contrast, Congress designated the SEC as the primary enforcement agency of for the securities laws, and there is no limitation on the standing of the SEC to bring injunctive actions for violations of Section 10(b). Id. citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 751 n.14 (1975).

Here, the SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b) of the Exchange Act and Rule 10b-5. See e.g., SEC v. North Am. Research & Dev. Corp., 424 F.2d 63, 84 (2d Cir. 1970) (reliance not an element of a Rule 10b-5 claim in the context of an SEC proceeding); Berko v. SEC, 316 F.2d 137, 143 (2d Cir. 1963) (reliance, loss causation and damages not relevant because "[t]he Commission's duty is to enforce the remedial and preventive terms of the statute in the public interest, and not merely to police those whose plain violations have already caused demonstrable loss or injury"); SEC v. Norton, 1997 WL 611556, at *3 n.2 (S.D.N.Y. Oct. 3, 1997) (proof of justifiable reliance and damages are not required in an SEC enforcement action). Accordingly, those concepts – applicable only to private actions – have no relevance to the consideration of whether the SEC has satisfied the "in connection with" requirement.

## III. TRADING IN WRC NOTES DURING THE RELEVANT PERIOD FURTHER ESTABLISHES THE "IN CONNECTION WITH" REQUIREMENT

As noted, the Supreme Court's broad construction of the "in connection with" element requires only that that the fraud alleged 'coincide' with a securities transaction. E.g., Dabit, 126 S. Ct. at 1513. One interpretation of such a "coincident" requirement is that there be some evidence of a securities transaction within proximity to the false and misleading disclosure. Here, there should be no dispute that there were such transactions.

Ironically, the very brief that challenges the SEC's ability to establish the "in connection with" requirement further argues that there were securities transactions coincident to the alleged fraud. Kenney argues that the Monroe error was immaterial because there was "*zero* market reaction to the taking of the bad debt reserve . . ."[4] In his Trial Memorandum, as well as other briefs filed in this action, Kenney specifically asserts that there was trading in the WRC Notes during the relevant period and that "[t]he day after the bad debt reserve was announced, the price of the company's Notes increased."[5] Thus, in making his immateriality argument, Kenney not only asserts that was there active trading around the time of the disclosure of the relevant events; he implicitly contends that the market was sufficiently active that the bond prices fairly reflected all material information disclosed by the Company. While the SEC has challenged Kenney's conclusions on this point,[6] there can be no dispute that there were in fact securities transaction that "coincided" with the Company's disclosures.

---

[4] Defendant's Memorandum in Opposition to the SEC's Trail Memorandum at 7.

[5] Trail Memorandum of Defendant at 16; see also Memorandum of Law in Opposition to Plaintiff's Motion *in limine* No. 2 at 8-10.

[6] The SEC challenged the methodology utilized by Kenney's bond pricing expert, David Lasater. Because the WRC bonds were thinly traded, Mr. Lasater found that it may take up to 90 days for the market to fully absorb the disclosed information. In the end, he was unable to rule out the possibility that the restatement disclosures had an effect on the bond price within that 90-day window. See SEC's Reply Memorandum in Support of its Motion *In Limine* No. 2 at 7-9.

To the extent that the Court deems it necessary to show specific purchases and sales of the WRC Notes during the relevant time period, this Court may take judicial notice of the WRC bond prices from transactions following the release of WRC's 2002 year end and first quarter 2003 reported results. Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 (2d Cir. 2000); Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F. Supp. 2d 163, 175-76 (S.D.N.Y. 2006) ("Courts may also take judicial notice of stock prices . . . .") citing In re AOL Time Warner, Inc. Sec. and ERISA Litig., 381 F. Supp. 2d 192, 246 n. 61 (S.D.N.Y. 2004). The trading data will show both purchases and sales during such time period. Moreover, if it becomes necessary, the SEC will seek to introduce, through the Credit Suisse document custodian, the fact that there were specific transactions in the WRC notes following the Company's release of its 2002 Form 10-K and its Form 10-Q for the first quarter of 2003.

**CONCLUSION**

For the reasons stated above, the SEC has satisfied the "in connection with" requirement.

Dated: November 27, 2006

Respectfully Submitted,

/s Robert W. Pommer III

Robert W. Pommer III (RP 5328)
Thomas C. Swiers
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
(202) 551-4479 (Pommer)
(202) 772-9245 (Fax)

**CERTIFICATE OF SERVICE**

This is to certify that I have caused a copy of the Securities and Exchange Commission's Bench Memorandum Regarding the "In Connection With" Requirement, to be served upon the persons listed below by electronic mail and Federal Express on this 27 day of November, 2006:

Paul J. Fishman, Esquire
Lance J. Gotko, Esquire
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1130 (Fishman)
(212) 373-7930 (Fax)

**Attorneys for Defendant Martin E. Kenney, Jr.**

s/ Robert W. Pommer III
Robert W. Pommer III